UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MARTINIZING INTERNATIONAL LLC,
assignee of Martin Franchises, Inc.,
a Delaware Corporation,

        Plaintiff,

v.　　　　　　　　　　**MEMORANDUM OF LAW & ORDER**
　　　　　　　　　　　Civil File No. 15-551 (MJD/BRT)

BC CLEANERS, LLC, a Minnesota limited
liability company, BRENT LUNDELL, and
TIMOTHY CARVER, jointly and severally,

        Defendants.

Aaron R. Hartman, Gerald S. Duffy, and Matthew S. Duffy, Monroe Moxness Berg PA, and K. Dino Kostopoulos, Kostopoulos Rodriguez, PLLC, Counsel for Plaintiff.

No appearance by Defendants.

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment Against Defendants BC Cleaners, LLC, Brent Lundell, and Timothy Carver. [Docket No. 27] The Court heard oral argument on November 24, 2015.

## II.   BACKGROUND

### A.   Factual Background

1

Plaintiff Martinizing International LLC ("Martinizing International" or "Plaintiff") is a Michigan limited liability company based in Michigan. (Am. Compl. ¶ 1.) Martinizing International is the assignee of certain assets from Martin Franchises, Inc., and is engaged in the business of franchising the Martinizing dry cleaning system in North America, South America, and Asia. (Id.)

### 1. The Franchise Agreements

On June 1, 2011, J. Markus Kanning and KM Cleaners, Inc. ("KM") entered into two franchise agreements ("Franchise Agreements") for the operation of Martinizing Dry Cleaning Stores in Eagan, Minnesota, and Inver Grove Heights, Minnesota ("Franchised Locations"). (Hartman Aff. ¶ 9; Hartman Aff., Exs. F-G.)

The Franchise Agreements set forth the conditions under which Kanning and KM could use the trademarks MARTINIZING, ONE HOUR MARTINIZING, MARTINIZED, and other related marks ("Martinizing Marks") (Franchise Agreements § 2.) Kanning and KM were prohibited from selling the Franchised Locations or assigning the Franchise Agreements without the written consent of the franchisor, Martinizing International. (Franchise Agreements §§ 13(A), (B), 15(A).)

## 2. Sale of the Franchised Locations

On August 22, 2014, KM entered into an asset purchase agreement with Defendant BC Cleaners, LLC ("BC"). (Hartman Aff. ¶ 10; Hartman Aff., Ex. H.) Martinizing International had no knowledge of this sale and did not give written consent. (Hartman Aff. ¶ 10.) Defendant Brent Lundell signed the agreement on BC's behalf as BC's "chief Manager." (Hartman Aff., Ex. H.) As part of the sale, BC assumed various promissory notes and Lundell and Defendant Timothy Carver signed the promissory notes as guarantors for BC. (Id.)

BC is a Minnesota limited liability company with its principal place of business in Minnesota. (Am. Compl. ¶ 2.) Lundell is a Minnesota resident and is a member and manager of BC. (Id. ¶ 3.) Carver is also a Minnesota resident and a member and manager of BC. (Id. ¶ 4.)

On August 22, 2014, Defendants began using the Martinizing Marks in their operation of the Franchised Locations without Plaintiff's approval. (Hartman Aff. ¶ 11; Hartman Aff., Ex. I.) Defendants displayed the Martinizing Marks on the exterior of the Franchised Locations up through the filing of the Amended Complaint on February 20, 2015. (Id.)

On January 15, 2015, Plaintiff learned of Defendants' infringing use of the Martinizing Marks and delivered a letter to Defendants BC and Lundell

demanding that they immediately stop using the Martinizing Marks or immediately sign a franchising agreement with Plaintiff ("Cease and Desist Letter"). (Hartman Aff. ¶ 12; Hartman Aff., Ex. J.) The Cease and Desist Letter demanded a response within 5 days or else Plaintiff would take action to protect its marks. Defendants continued to use the Martinizing Marks at the Franchise Locations, after receiving the Cease and Desist Letter, until February 20, 2015. (Longe Aff. ¶ 5; Hartman Aff. ¶ 11.)

### B. Procedural History

On February 19, 2015, Martinizing International filed a Complaint in this Court against BC, Lundell, and Carver. [Docket No. 1] On February 20, 2015, Martinizing International filed an Amended Complaint against the same Defendants alleging: Count 1: Trademark Infringement under the Lanham Act; Count 2: Common Law Trademark Infringement; Count 3: Unfair Competition; Count 4: Unjust Enrichment; Count 5: Violation of the Minnesota Deceptive Trade Practices Act ("MDTPA") Against Defendants; and Count 6: Tortious Interference with Contract and Prospective Economic Relations Against Defendants. [Docket No. 4] The Amended Complaint seeks treble damages, a permanent injunction, prejudgment interest, costs and attorneys' fees, and such further relief as the Court deems just.

The Summons and Amended Complaint were served on Carver on February 24, 2015, and on BC and Lundell on February 25, 2015. (Hartman Aff. ¶¶ 3-5; Hartman Aff., Exs. A-C.)  More than 21 days have passed and no party has made an appearance.  On July 1, 2015, the Clerk entered default against all Defendants.  [Docket No. 24]

On September 24, 2015, Plaintiff filed a motion for default judgment against Defendants.  Defendants were personally served with the motion and accompanying documents on September 28 [Docket No. 32] and with the amended notice on November 12 [Docket No. 34-36].

### III.   DISCUSSION

#### A.   Default Judgment Standard

BC, Lundell, and Carver have failed to answer or otherwise appear in this matter, and the Clerk's Office has entered default; thus, this matter is ripe for default judgment.  Fed. R. Civ. P. 55.  The Court accepts the factual allegations in the Amended Complaint as true because "[a] default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citations omitted).

> When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding.

Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001) (citations omitted).  Actual damages must be proven "to a reasonable degree of certainty." Id. at 819.

>   B.   **Liability for Defendants Carver and Lundell**

The asset purchase agreement by which KM sold the businesses at the Franchise Locations only names BC as the buyer.  (Hartman Aff., Ex. H.)  Neither Carver nor Lundell are named, although Lundell did sign on BC's behalf, in his capacity as "chief Manager."  Lundell and Carver did agree to personally guarantee the promissory notes, but these notes do not give them any ownership in or liability for the businesses at the Franchise Locations.

Plaintiff asserts that, because Carver and Lundell are members, managers, and guarantors of BC, they should also be held personally liable for the unpaid royalties and fees.  For this proposition, Plaintiff cites to Novus Franchising, Inc. v. AZ Glassworks, LLC, a case in which the individual defendants had executed personal guaranties obligating themselves to all obligations contained in the

franchise agreements at issue.  Civil No. 12–1771 (MJD/TNL), 2013 WL 1110838, at *1 (D. Minn. Mar. 18, 2013).

The Court denies Plaintiff's motion for default judgment against the individual Defendants Lundell and Carver.  Plaintiff may be correct that, if BC had entered into a Franchise Agreement, as it should have, then the individual Defendants would have been required to sign personal guaranties obligating them to the terms of the Franchise Agreement as members and managers of BC.  However, BC did not sign a Franchise Agreement, and Lundell and Carver did not sign personal guaranties submitting themselves to individual liability.  The factual allegations in the Amended Complaint and the evidence submitted in conjunction with this motion only show that BC committed infringement by using the Martinizing Marks without authorization.  There is no evidence that Lundell or Carver personally committed trademark infringement.  Plaintiff provides no basis for this Court to pierce the corporate veil or to find that Lundell and Carver personally violated the law.  Therefore, there is no legal basis for the Court to enter judgment against them.

### C. Liability for Defendant BC

Through the well-pleaded facts in the Amended Complaint and the evidence submitted in conjunction with the current motion, Plaintiff has

established that Defendant BC is liable for trademark infringement under the Lanham Act and the MDTPA. BC was not a franchisee and did not otherwise have permission from Plaintiff, yet it operated the Franchised Locations using the Martinizing Marks, which are owned by Plaintiff, in a manner likely to cause confusion. This constitutes trademark infringement under the Lanham Act. See 15 U.S.C. § 1125(a).

Similarly, BC engaged in a deceptive trade practice in violation of the MDTPA by using the Martinizing Marks without permission and passing itself off as an authorized Martinizing franchisee. See Minn. Stat. § 325D.44.

### D.  Request for Monetary Damages

#### 1.  Damages for Trademark Infringement

The Lanham Act provides a successful trademark holder is entitled to the following damages caused by infringement: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

Id.

"[T]he district court is given broad discretion to award the monetary relief necessary to serve the interests of justice, provided it does not award such relief as a penalty." Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir. 1980). Here, BC ignored the Cease and Desist Letter, refused to sign a franchise agreement, and continued to use Plaintiff's marks in the dry cleaning business. This evidence demonstrates that BC's conduct was willful.

### 2. Franchise Fees

BC operated the Franchised Locations as if it were an authorized Martinizing International franchisee and used the Martinizing Marks. However, BC was not an authorized franchisee and has not paid any of the royalties or other fees that franchisees are required to pay under the Franchise Agreements. BC took advantage of the goodwill of the Martinizing Marks but failed to pay any of the amounts that it would have paid as a legitimate franchisee. Plaintiff is entitled to the amount of money that BC would have owed to Plaintiff if BC had entered into the Franchise Agreements.

Thus, BC is liable for the transfer fees that would be owed for transferring the Franchise Agreements ($750 per Franchised Location), annual franchise fees ($3,167.25 per location based on 3% yearly adjustment ), and interest of 2% per month based on the late fees in the Franchise Agreements.  (See Hartman Aff. ¶ 13; Franchise Agreements ¶ 4(A) (annual franchise fees; 2% late fees), ¶ 15(A)(5) (transfer fee).)  This amounts to $7,834.50 in transfer fees and franchise fees, plus late fees of $156.69 per month for 11 months, for a total of $9,558.09 as of August 2015.  (Hartman Aff. ¶ 13.)

Plaintiff requests treble damages of $28,674.27.  The Court concludes that, given all of the facts of this case and the fact that it will award attorneys' fees, treble damages are not warranted and would constitute a penalty.  The Court awards damages of $9,558.09.

### E.     Request for Injunctive Relief

Both the Lanham Act and the MDTPA permit courts to enter permanent injunctive relief to prevent infringement of a party's registered trademarks.  See 15 U.S.C. § 1116; Minn. Stat. § 325D.45, subd. 1.

"In order to obtain a permanent injunction, a plaintiff must prove success on the merits, and the Court must analyze the threat of irreparable harm to the movant, the balance of the harms, and the public interest."  Novus Franchising,

Inc., 2013 WL 1110838, at *6 (citing Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999)).

Plaintiff seeks an injunction enjoining Defendants from further use of the Martinizing Marks.  Plaintiff asserts that it is also entitled to audit Defendants' financial records in order to determine any profits that they have earned as a result of their infringement.  See 15 U.S.C. § 1117(a)(1) (providing that trademark holder is entitled to recover infringing defendant's profits).  Plaintiff emphasizes that it has invested substantial money into its marks to ensure that customers can rely upon the brand when choosing their dry cleaner.

### 1. Success on the Merits

Plaintiff has established success on the merits with regard to Defendant BC as set forth in Section III(C).

### 2. Threat of Irreparable Harm

The Court presumes irreparable harm when trademark infringement has been established.  Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1012 (8th Cir. 2011).

### 3. Balance of the Harms

BC ignored the Cease and Desist letter. It made a choice to not establish itself as a legitimate franchisee with Martinizing International, but to present itself as if it were a legitimate franchisee. Any harm to BC caused by a permanent injunction flows directly from its own illegal conduct. The balance of the harms weighs in favor of an injunction.

### 4. Public Interest

Public interest supports granting injunctive relief as authorized under the Lanham Act and the MDTPA to prevent further violation of those statutes. The public interest also supports granting injunctive relief to deter trademark infringement.

### F. Request for Attorneys' Fees and Costs

The Lanham Act provides that the Court may award reasonable attorneys' fees to the prevailing party "in exceptional cases." 15 U.S.C. § 1117(a). "[W]hen a defendant's unlawful conduct was willful and deliberate, the court may well determine that this is the type of exceptional case for which an award of attorney's fees is appropriate." Cmty. of Christ Copyright Corp., 634 F.3d at 1013 (citation omitted). When an infringer continues to use marks after receiving a cease and desist letter and makes no response to that letter, the district court does

not abuse its discretion in finding willfulness and awarding attorneys' fees. Id. at 1013-14.  Additionally, the MDTPA permits the Court to award attorneys' fees to the prevailing party if "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive."  Minn. Stat. § 325D.45, subd. 2.

Plaintiff asserts that, as related to this action, it has incurred attorneys' fees of $17,388.75 and costs of $1,204.17, for a total of $18,592.92.  (Hartman Aff. ¶ 19; Hartman Aff., Ex. K.)  It estimates that it will incur an additional $2,000 in fees in preparing for and attending oral argument on this motion.  (Id.)

The Court concludes that an award of attorneys' fees is appropriate in this case.  BC continued to infringe even after receiving the Cease and Desist Letter.  Its violation of the law was flagrant.  Its actions caused Plaintiff to incur attorneys' fees and costs in order to pursue resolution.  The amount of the attorneys' fees requested is supported by the documentation provided.  The hourly rates charged are reasonable.  However, the Court concludes that the total amount requested is not reasonable under the lodestar method.  Throughout the billing records, there is time billed by local counsel for their communications with Michigan counsel and also time billed by Michigan counsel for their

communications with local counsel. This duplication was unnecessary. Additionally, this is a straightforward default trademark case where BC's liability was clear. In light of the uncomplicated nature of this case, the amount requested is too high, even given that there were some attempted settlement negotiations. Overall, the Court reduces the award of attorneys' fees requested, $19,388.75, by 20%, to $15,511. The Court awards the full amount of costs requested, $1,204.17. Thus, the total award for attorneys' fees and costs is $16,715.17.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Entry of Default Judgment Against Defendants BC Cleaners, LLC, Brent Lundell, and Timothy Carver [Docket No. 27] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The motion is **DENIED** as to Defendants Brent Lundell and Timothy Carver and they are **DISMISSED** as Defendants in this matter.

    b. The motion is **GRANTED** as to Defendant BC Cleaners, LLC.

2. Defendant BC Cleaners, LLC's willful, unauthorized use of Plaintiff's name and registered marks in the operation of two dry-cleaning businesses infringed exclusive rights in

        Plaintiff's name and registered marks under § 32 of the Lanham Act.  15 U.S.C. §§ 1114, 1125.

3.     Defendant BC Cleaners, LLC's use of Plaintiff's name and registered marks rises to the level of "willful," and Defendant BC Cleaners, LLC is liable to Plaintiff in the amount of $9,558.09 as established by the evidence submitted herein and as authorized under 15 U.S.C. § 1117(a).

4.     Pursuant to 15 U.S.C. § 1117(a)(1), Plaintiff is entitled to an audit of Defendant BC Cleaners, LLC's financial records and any profits recorded therein, which arose from operation of the two dry-cleaning business under Plaintiff's name and registered marks.

5.     Defendant BC Cleaners, LLC is permanently enjoined from any and all further use of Plaintiff's name and registered marks.

6.     Plaintiff is the prevailing party in this proceeding and as such, Defendant BC Cleaners, LLC is liable to Plaintiff for its reasonably incurred attorneys' fees and costs in the amount of $16,715.17, which were necessarily incurred to enforce and protect Plaintiff's name, registered marks, and trade dress.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 9, 2015         s/ Michael J. Davis
                                                Michael J. Davis
                                                United States District Court